(Decided 23rd June, 1876.)

---

THE PRESIDENT, MANAGERS AND COMPANY OF THE BALTIMORE AND YORKTOWN TURNPIKE ROAD *vs.* CHARLES H. BOONE.

*Construction of the Acts of 1860, ch. 259, and 1865, ch. 115, relating to the Rates of fare on the Passenger railway between Baltimore City and Towsontown—Drawback on Fares—Expulsion of a Passenger from a Car for non-payment of a Fare illegally demanded—Measure of Damages—Punitive and Exemplary Damages—Presumption of Deliberation on the part of a Corporation in regard to its dealings with the public.*

The Act of 1860, ch. 259, authorized a then existing turnpike company to lay down on its road a railway for passenger cars between the City of Baltimore and Towsontown, and fixed the rate of fare between those points. It also by the 8th section authorized the company to extend its said railway into the City of Baltimore, subject to such restrictions, terms and conditions as the Mayor and City Council of Baltimore might prescribe. And by an ordinance of said city the rate of fare was fixed at five cents for each passenger for all distances within the city limits. The Act of 1865, ch. 115, sec. 1, authorized the company to collect from each passenger over its road not more than thirty cents *for the distance between the city limits and Towsontown;* and not more than six cents for *each mile or fraction thereof for way passengers on any portion of its railway.* In the case of a passenger to the City of

Baltimore from a place on the road distant less than a mile from the city, it was HELD :

1st. That the company had no right to claim from him more than eleven cents, that is to say, six cents for the fraction of a mile beyond the city limits, and five cents for the route over its road in the city.

2nd. That whilst the company might provide for any reasonable *"drawback"* for its own security, it must not be in the face of the law which gave it no authority to receive more than eleven cents. Below that limit, as a *maximum*, it could exercise its own discretion as to the amount of fare or any discount on the same.

In the case of a passenger forcibly ejected from a car for non-payment of a fare illegally demanded, it was HELD :

1st. That the rule or measure of damages is a question of law.

2nd. That if the act of expulsion was deliberately and forcibly done, the jury might give such exemplary damages as they might consider a proper punishment for the conduct of the defendant acting through its agent.

3rd. That the defendant, upon which corporate franchises had been conferred, must be presumed, in the absence of evidence to the contrary, to have acted advisedly and with full deliberation in regard to its dealings and transactions with and for the public.

4th. That an individual committing a similar act might not ordinarily be considered as having the same means and inducements for deliberation in his conduct, nor affected by the same liability or obligation.

APPEAL from the Circuit Court for Howard County.

By the Act of Assembly of 1860, ch. 259, the appellant, a Turnpike Company, which had then been a long time in operation, was authorized to lay down on its road a railway for passenger cars, and by the fourth section of that Act, the company was authorized to demand " not more than twenty-five cents fare or toll for the whole distance between the (Baltimore) city boundary and Towsontown, and not more than five cents for each mile or fraction thereof, for each way-passenger." By the eighth section of this Act, the company was " authorized to extend their said railway into the City of Baltimore, to such point or points, and through such streets or ways, and to connect

or cause the same to be connected with such of the railway tracks in the said city, or which might be constructed therein, as the Mayor and City Council of Baltimore should permit, direct and ordain, and subject to such restrictions, terms and conditions as said Mayor and Council might prescribe and impose." By various ordinances of the Mayor and City Council of Baltimore, the particular streets were named through which the company's railway was permitted to be operated, and the rates of fare were fixed at five cents for each passenger for all distances within the city limits. At January session, 1865, the Legislature passed an Act, chapter 115, to regulate the fares. The preamble of this Act recites, that by the Act of 1860, the company was "authorized and empowered to lay down and equip a railway in Baltimore City, and on the Baltimore and Yorktown Turnpike Road, between Baltimore City and Towsontown, *and to extend the same into the city,*" and the provision as to limitation of fares contained in the Act of 1860, and the fact, for reasons therein stated, that "the *rate of fare which they,* (the company,) are at present empowered to charge is entirely insufficient," "to pay the cost of working their railway, and of properly maintaining their tracks and equipment thereof." Then it is enacted, (sec. 1.) that the company is authorized to charge and collect from each passenger "*on said railway,* not more than thirty cents fare, as toll for the whole distance between the city limits and Towsontown, and not more than *six cents local fare* for each mile or fraction thereof, each way-passenger may travel *on any portion of the railway of the said company.*" And by sec. 2, so much of the original and supplemental Acts therein referred to as were "inconsistent with the provisions" of said Act were repealed. The facts of the case are sufficiently stated in the opinion of the Court.

*Exception.*—At the trial, the plaintiff offered the two following prayers:

1. If the jury believe from the evidence that the plaintiff, on or about the 16th of August, 1874, entered the cars of the defendant, (then engaged in the usual occupation of transporting passengers from Towsontown or some other point out of Baltimore City, into said city,) within one mile from the limits of said city, with the intention of going into said city, and so informed the conductor put in control of the said car by the defendant, and authorized to collect fares from the passengers, then it was not lawful for the defendant's said agent to demand twelve cents for the amount of the plaintiff's fare into said city, and the said demand, and expulsion of the plaintiff by force from the car, for not paying such amount, (if the jury find that the demand and expulsion occurred,) was unlawful, and a violation of the plaintiff's legal rights, and the plaintiff is entitled to recover.

2. If the jury find for the plaintiff under the first instruction of the plaintiff, they should award the plaintiff such sum as damages as will compensate him for the injury to his person, feelings and character arising from the unlawful act of the defendant, and if they believe that said unlawful act was deliberately and forcibly done, then they may give such exemplary damages as they may consider a proper punishment for the conduct of the defendant acting through its agent, the conductor.

 And the defendant offered the two following prayers:

1. If the jury shall find from the evidence that the plaintiff was a passenger on the defendant's Passenger Railway from a point in Baltimore County to and into the City of Baltimore, and that when his fare was demanded by the conductor, he offered the coupon which has been offered in evidence as part of his legal fare, and the conductor refused to receive the same, and informed the plaintiff that he could not receive it, but that payment for the same could only be made at the Company's ticket-office in Baltimore City, and that the plaintiff then refused

to pay one cent, a part of his said fare, and when told by the conductor that he would have to put him off the car unless he paid the said amount of one cent, and that the plaintiff still refused to pay said cent, and was then put off the car with no more force than was necessary for the purpose, and that said conductor offered to return to the plaintiff the full amount that he had paid on account of his said fare before the car was again started, then the plaintiff is not entitled to recover in this case.

2. If the jury shall find from the evidence that the plaintiff was a passenger on the defendant's Passenger Railway from a point within the limits of Baltimore County to and into the City of Baltimore, and that there was a regulation of said company by which the conductors were instructed to demand the sum of twelve cents, from all passengers travelling over their road in their cars from any point of the first mile in the said county to any point inside of said city, and to give said passengers a drawback of one cent in a coupon like that offered in evidence, and that said plaintiff then paid eleven cents and tendered the said coupon offered in evidence to the said conductor, and that the said conductor refused to receive said coupon, and demanded the payment of one cent in money, for which under the regulations of said defendant, said conductor was to give the plaintiff another like coupon for one cent; and if the jury shall further find that the said plaintiff refused to pay said cent, and the conductor then put him off the car, using no more force than was necessary for the purpose, and that before the car started again, the said conductor offered to re-pay the said plaintiff the eleven cents he had before paid, then the plaintiff is not entitled to recover.

The Court granted the prayers of the plaintiff, and rejected those of the defendant. The defendant excepted.

The jury rendered a verdict for the plaintiff and judgment was entered accordingly. The defendant appealed.

Balt. & Yorktown Turnpike *vs.* Boone.

The cause was argued before BARTOL, C. J., BOWIE, STEWART and ALVEY, J.

*Arthur W. Machen* and *Thomas Donaldson*, for the appellant.

The true construction of the Act of 1865, ch. 115, gives the appellant the right to charge *six cents* for each mile or fraction of a mile, within the City of Baltimore as well as within the County.

On the right to charge twelve cents and give a drawback coupon for the one cent the following authorities were cited: *State vs. Goold*, 53 *Maine*, 279–281; *Ill. Cent. R. R. Co. vs. Nelson*, 59 *Ill.*, 110.

And on the measure of damages the following authorities were cited: *Bannon vs. B. & O. R. R. Co.*, 24 *Md.*, 123, 124; *Pleasants vs. North Beach R. R. Co.*, 34 *Cal.*, 586; *Pittsburg, F. W. & Chicago R. R. Co. vs. Slusser*, 19 *Ohio St. R.*, 157; *Hamilton vs. Third Av. R. R. Co.*, 53 *N. Y.*, 25.

*John Scott, Jr.* and *James A. L. McClure*, for the appellee,

Cited *Hibbard vs. N. Y. and Erie R. R. Co.*, 15 *N. Y.*, 458; *Gaddard vs. Grand Trunk Railway*, 57 *Maine*, 214; *B. & O. R. R. Co. vs. Blocher*, 27 *Md.*, 287.

STEWART, J., delivered the opinion of the Court.

This was an action brought by the appellee against the appellant, to recover damages for his expulsion from one of its cars.

It appears that the defendant as a company, having cars for the transportation of travellers, with authority to charge such rates, as prescribed by law and ordinances of the City of Baltimore, had a regulation, by which its conductors were instructed to demand from every passenger, travelling on its road, from any point of the

first mile in Baltimore County, to any point inside of the City, when he had not a ticket obtained at its office, the sum of twelve cents, and to give to the passenger a drawback of one cent, in a coupon payable at its office. This regulation compelled the passenger, in fact, to pay twelve .cents, and to become the creditor of the company to the amount of one cent.

The plaintiff, it, seems, on his trip out of the city, had accepted a coupon in the settlement of the fare, which he offered on his return to another conductor and eleven cents for his fare back to the city.

The conductor refused to receive the coupon, demanding an additional cent which the plaintiff refused to pay.

Being notified by the conductor that he would remove him from the car, if he did not pay the same, he persisted in his refusal to pay it, and was forcibiy removed from the car.

The controversy has, therefore, grown out of the claim of the defendant for the one cent, with the drawback for the same, and the refusal of the plaintiff to pay it.

At the trial in the Circuit Court, the two prayers of the plaintiff were granted, and the two offered by the defendant refused, and it has taken exceptions to this ruling of that Court.

The first prayer of the plaintiff in substance, instructs the jury, that it was not lawful for the defendant's agent to have demanded the twelve cents for the plaintiff's fare, and that his expulsion from the car for not paying it, was a violation of his legal rights, entitling him to a recovery.

His second prayer instructed the jury if they found for him under his first prayer, to award him such damages as would compensate him for the injury to his person, feelings and character, arising from the unlawful act of the defendant, and if they believed the said unlawful act was deliberately and forcibly done, they might give such exemplary damages as they might consider a proper

punishment for the conduct of the defendant, acting through its agent the conductor; thus presenting squarely the question as to the measure of damages.

The defendant's first prayer rests its defence on the right to refuse the coupon of the company for one cent, offered by the plaintiff to its conductor.

This only involved a question quite immaterial and insufficient, which might notwithstanding mislead the jury, and it was properly refused.

Its second prayer claims the right by its regulation before stated, to receive twelve cents for the fare, assuming eleven cents to be the *maximum* amount, by giving a coupon payable by the company at its office, for the re-payment of the one cent; upon the theory that such action was necessary for its own security, as a proper check upon its conductors in the management of its business.

The plaintiff's first prayer therefore presents the question, as to whether the lawful fare to which the defendant was entitled, was twelve cents; whilst the second prayer of the defendant, involves the legal efficacy of its regulation referred to, if the fare does not in that mode, exceed eleven cents.

We think the Circuit Court properly construed the law and ordinances of the city, in the instruction in the plaintiff's first prayer, that the defendant was not entitled to demand of the plaintiff the twelve cent fare, and was liable in damages to the plaintiff for his expulsion from the cars, because of his refusal to pay the same.

The defendant had no right to claim from the plaintiff more than eleven cents for the distance proposed to be travelled, that is, six cents for the fraction of a mile beyond the city limits, and five cents for the route over its road in the city.

The Act of 1865, ch. 115, sec. 1, authorized the defendant to collect from each passenger over it road, not more than thirty cents, *for the distance between the city limits*

*and Towsontown;* and not more than six cents, *for each mile or fraction thereof, for way-passengers on any portion of its railway.*

The Act of 1860, ch. 259, had prescribed no rates, except on the *line of travel outside of the city*, referring to the city authorities, the right to prescribe the rates therein—and if it had been intended by the second section of the Act of 1865, to repeal and abrogate the eighth section of the Act of 1860, conferring upon the defendant the right to run its road in the city, subject to such terms and conditions as the city might prescribe, more specific and clear language to that effect would have been employed.

The Act of 1865, had reference to the charges for fare on the road, from the city limits to Towsontown, or any part of the road between those limits, leaving undisturbed the rates through the city to be determined by the authority thereof.

The regulation of the company referred to in exceeding the *maximum* of fare allowed by law, was of course without authority of law for its support.

Whilst the company might provide for any reasonable drawback for its own security, it must not be in the face of the law, which gave it no authority to receive more than eleven cents. Below that limit as the *maximum*, it could exercise its own discretion as to the amount of fare or any discount on the same.

For its own security it might prescribe any reasonable rules, requiring for example, a passenger to provide himself with a ticket, to be conveniently obtained as a preliminary requisite to his right to use its cars; but the fare could in no event exceed the limit prescribed by its charter or the existing laws. The case of the *State vs. Goold*, 53 *Maine*, 279, relied upon by the appellant, is not in conflict with these views.

The second prayer of the defendant was properly refused.

The second prayer of the plaintiff in the instruction, in the first clause thereof, presents a sound and unquestionable proposition, but the correctness of the further instruction, in the latter portion thereof, is not entirely free from difficulty.

The rule or measure of damages is a question of law. *Sedgwick on Damages*, 718.

The defendant was certainly bound to provide all reasonable regulations and facilities, for the reception and comfort of passengers, and to use all proper precaution as far as human foresight would allow, for their safety on the route, and was answerable in damages for any misconduct or negligence of its servants. 2 *Kent's Com.*, 601–2.

The question of damages and the proper occasion for any increase thereof, beyond adequate compensation to the party aggrieved, to be referred to the discretion of the jury, and found by them, as a punishment for the defendant, regarding the example to be made upon public consideration, is somewhat debateable, and involves in its proper application and enforcement very sound discrimination as to the character of the case to authorize it.

Investing the jury with such unlimited discretion, is a feature or provision in the administration of justice by the Court, it must be conceded, somewhat anomalous, and the question has been seriously and ably discussed, as to whether there is any solid and sufficient ground for the allowance of such damages, over and above the rule of compensation to the party aggrieved in any case.

Where such power has been allowed to be exercised by the jury, from reasons of public policy, the utmost caution has been found necessary to guard against its abuse, by confining it to cases of very flagrant outrage upon the rights of an unoffending party.

There has of course, from the very nature of the law, been much difficulty in laying down any unerring and

inflexible rule, accurately and precisely distinguishing the line between compensatory and vindictive damages. But it results from the assessment of compensatory damages as defined in the first part of the prayer, now every where recognized as legitimate; such latitude is given to the jury as in point of fact, to render the margin of difference between indemnifying and exemplary damages, less distinct, and practically somewhat immaterial. The *bona or mala fides* of the defendant's claim and the deliberation with which it was determined upon and pursued—the manner of its assertion by force or otherwise, the mode of resistance to its payment—the deportment of the parties in relation to their mutual rights or demands, are, of course, pertinent matters of enquiry in determining the character and degree of the damages, to which a party may be entitled.

Force, fraud, malice, wantonness, rudeness, oppression, gross negligence or deliberate, inexcusable or criminal indifference to civil obligations or the rights of others, may all be ingredients in the act complained of.

It was said in very concise language, in the decision of the Supreme Court in the case of the *P. W. & B. R. vs. Quigly*, 21 *Howard*, 214, that whenever the injury complained of has been committed wantonly or maliciously, and with circumstances of contumely or indignity, the jury are not limited to the ascertainment of a simple compensation for the wrong against the aggrieved party.

But the malice is not merely the doing of an unlawful or injurious act; the word implies that the act was conceived in the spirit of mischief or of *criminal indifference to civil obligations.*

Such indifference to the obligations of public duty on the part of a corporation, created not solely for its own emolument, but for the public convenience, may afford reasonable ground of liability for exemplary damages.

Assuming there was sufficient evidence to satisfy the jury, that the unlawful act of the defendant was done, both with deliberation and with force, thus combining those two elements in its perpetration, and no question was made in the Circuit Court for our review as to its insufficiency to support the instruction granted;—it seems not an unreasonable proposition to hold the defendant bound accordingly to undergo the ordeal of the jury, authorized in the exercise of its sound discretion, to give such exemplary damages as they may consider a proper punishment for the defendant, under the circumstances, for such an outrage.

The defendant, upon which corporate franchises had been conferred, must be presumed, in the absence of any evidence to the contrary, to have acted advisedly and with full deliberation, in regard to its dealing and transactions with and for the public. An individual committing a similar act, might not ordinarily be considered as having the same means and inducements for deliberation in his conduct, nor affected by the same sort of liability and obligation.

In undertaking to adopt regulations to operate upon the public in detail affected by its action, it had the opportunity from its character as a corporation, to determine at its leisure, its policy; and could not well claim to be excused for hasty and illegal conduct. If the result of such determination was the establishment of rules, either to compel the passenger availing himself of his legal right to travel in its cars, to pay an unwarranted and illegal exaction, or be compelled to submit to his expulsion therefrom by force, through its subordinates, with all the attendant indignity; it thereby assumed the hazard of subjecting itself to the highest measure of damages, for the deliberation and force accompanying its illegal conduct. This would seem to be a reasonable consequence. It should be careful to keep within the limits of the law, and not

encroach upon the rights of any passenger. By transcending such bounds deliberately and forcibly, public policy demands, that it shall be compelled to incur the highest grade of damages to a party aggrieved by its unlawful action, according as the sound discretion of an intelligent jury may determine.

The granting of the plaintiff's second prayer must be affirmed.

*Judgment affirmed.*

(Decided 23rd June, 1876.)