St. Louis-San Francisco Railway Company *v.* Smith.

Opinion delivered November 13, 1923.

1. CARRIERS—BURDEN OF PROVING UNLAWFUL EVICTION.—Where a carrier denies a passenger's allegation that a train auditor forcibly and unlawfully ejected him, the passenger has the burden of proving his unlawful eviction.

2. CARRIERS—EVICTION OF PASSENGER.—Under Crawford & Moses' Dig., § 879, authorizing railroads to charge one-half fare for children between 5 and 12, and § 881, authorizing the eviction of any person from a train who refuses to pay fare or toll, a railroad could evict from its train both a father who had paid his fare and his minor child, more than 5 years old, under his custody and control, but whose fare he refused to pay.

Appeal from Little River Circuit Court; *James S. Steel,* Judge; reversed.

*King, Mahaffy & Wheeler,* for appellant.

The verdict was contrary to and unsupported by the evidence, in that the preponderance proved that plaintiff was not evicted from the train. The preponderance of the evidence also proved that plaintiff was not cursed, abused and maltreated, and under the following authorities was entitled to a reversal of the judgment. 70 Ark. 385; 57 Ark. 402; 206 S. W. (Ark.) 895; 20 Ark. 600; 63 Ark. 65.

Appellant had the right to evict appellee under the law because of the nonpayment of fare of his son. 10 C. J. 933; 55 S. W. 304; 102 S. W. 157; 191 S. W. 386; 62 Md. 300. Appellee was required to pay half fare for his son, C. & M. Dig. sec. 879; and under sec. 881 could be evicted for failure to do so.

Appellant having the legal right to evict appellee, there was no basis for the assessment of damages for humiliation, since he was not entitled to damages for the eviction. Mental suffering alone cannot be made the subject of an independent action for damages. 64 Ark. 538; 84 Ark. 42; 116 S. W. 192; 140 S. W. 141; 104 S. W. 554; 127 S. W. 707.

The case should be reversed and the cause dismissed.

*A. D. DuLaney* and *John J. DuLaney,* for appellee.

It is not necessary that there be an actual physical ejection to recover damages. Certainly there was restraint or coercion, and, under such state of facts, appellee was entitled to recover. 89 Ark. 188.

There was sufficient evidence to sustain the jury's findings, and they will not be disturbed on appeal. 125 Ark. 314; 88 Ark. 164; 92 Ark. 569; 88 Ark. 200; 110 Ark. 632; 96 Ark. 405.

Sec. 879, C. & M. Digest, does not authorize eviction for nonpayment of the half fare authorized to be charged for a child. The right to evict was not raised in the lower court and cannot be here raised for the first time. 137 Ark. 530.

Wood, J. The appellee instituted this action against the appellant to recover damages for an alleged unlawful eviction and for maltreatment. Appellee alleged that on the 28th day of May, 1921, he was a passenger on appellant's road from its station at Ashdown, Arkansas, to Orton, Arkansas; that while on the train as such passenger the auditor cursed, abused, and maltreated him, and used in his presence violent, profane and insulting language, and forcibly evicted him from the train at Red Bluff station, three miles west of his destination; that said eviction and abusive and insulting language was unlawfully and wilfully done; that he suffered shame and humiliation from the cursing, which occurred in the presence of other passengers on the train and in the presence of his young son, who was with him at the time, all to his damage in sum of $500, for which he asked judgment.

In its answer, the appellant denied specifically the allegations of the complaint. The testimony on behalf of the appellee was substantially as follows: He was a passenger on appellant's train between Ashdown and Orton, Arkansas, on May 28, 1921. He got on the train with his little boy, and gave the auditor his ticket. He had a sack of flour with him, and after he gave his ticket to the auditor the auditor asked him what he was going to do with

the sack of flour, and why he didn't give it to the baggage man. Appellee then detailed the conversation as follows: "He told me, 'By God, the Frisco wasn't running a charity train; there had been too much of that done on the Frisco line, parents running their children through and not paying anything; they all claim they are under five years old; you might have told the truth about the kid being six years old'—I mean seven years old. I says, 'I ought to know the kid's age.' He says, 'That don't make any difference. By God, you have got to pay for him!' and I gave him a dime. He says, 'I am going to put you off; that ain't enough to pay the kid's fare to Orton or Red Bluff, or not even to Long.' I says, 'This is all I have got'; and John Machen and Ben Wright was sitting across the aisle from me. I asked John did he have any money that I could pay my kid's fare as far as Red Bluff anyhow. He said no, he didn't have nothing only train fare himself, and Ben Wright told me he had a dime he would loan me, and when he loaned me the dime the auditor came back and says, 'By God, have you dug that money up yet?' I says I have got part of it. What do I have to pay for the kid's fare to Orton?' He says 24 cents. He says, 'What have you got?' I says 'Another dime.' I handed it to him, and he says 'I will let you and the kid go on to Red Bluff, and if you can't dig up the rest of the fare you will sure as hell get off at Red Bluff.' And about the time we got to Red Bluff the brakie hollered 'Red Bluff,' and he came to the door too and started in and asked me— so he came to the door—I was in the smoker—came to the door and told me he was going to put the kid off. I says, 'If you put the kid off I am going to get off with him; if you put the kid off I will have to get off too.' I told him to give me part of my money back, 'I ought to have a little coming if you ain't going to carry me on to Orton.' He says, 'Give you hell if you look like you wanted it.' He says, 'You can ride on to Red Bluff or get off.' John Machen took hold the kid and says, 'Come

on, son, your papa is liable to have a fight with the auditor.' I had some stuff in a sack and a sack of flour, and I picked up my stuff and got off, and I had to walk then in home about three miles'.''

The appellee further testified that the language used to him by the auditor was humiliating; that he was crippled in one of his legs; was in poor health; had been sick, and came very near getting too hot walking from Red Bluff to his home at Orton, a distance of about three miles. Besides the sack of flour, he had lard and a bucket of molasses in a sack, and also a pair of overalls.

A witness on behalf of the appellant testified that he was the auditor on the train on the occasion testified to by the appellee. Witness remembered that the man got on the train at Ashdown, and had a ticket for himself. He didn't have any ticket for his child. Witness told the man to borrow the money from some of his friends on the train. Some one loaned the man some money. Witness didn't remember how much. He collected the fare and cut the passenger a cash fare receipt and let them ride to their destination. He didn't tell the appellee that he would have to get off at Red Bluff, and did not curse him or use any profane and abusive language toward him. On cross-examination he stated that he didn't remember whether he told appellee that he would have to get off. Witness presumed that if he collected the man's fare and the child's fare they would get off at their destination. He denied telling the appellee that he would give him hell if he wanted his money back, and stated that he didn't talk in a loud tone of voice. He didn't remember taking up Smith's ticket from Ashdown to Orton, and didn't remember appellee having a sack of flour with him—couldn't say whether he gave a cash fare slip to Smith or any one else.

Testimony of other witnesses who were on the train at the time corroborated the testimony of the auditor to the effect that he did not curse the appellee or use any profane or abusive language in his presence.

The appellee testified, in rebuttal, that the auditor gave him a cash fare slip for his boy from Ashdown to Red Bluff, and the auditor also gave him back two cents.

The court instructed the jury, at the request of the appellee, as follows: "No. 1. You are instructed that, if you find that P. A. Smith purchased a ticket from the defendant, and boarded its train at Ashdown, Arkansas, and gave said ticket to the defendant's auditor for transportation from Ashdown to Orton, then the relation of carrier and passenger existed, and it was the duty of the defendant to transport the plaintiff to Orton on its train; and if you further find from a preponderance of the evidence that the defendant's auditor ejected the plaintiff from its train at Red Bluff, and used insulting language toward him, then you should find for the plaintiff in damages such sum as will reasonably compensate him for such ejection, inconvenience, insults and humiliation as he suffered therefrom, if any you may find, not to exceed the amount sued for."

At the request of the appellant the court instructed the jury as follows: "No. 1. The court instructs you that, if you find from the evidence that defendant's servant did not curse and abuse plaintiff, and the plaintiff voluntarily left the train at Red Bluff, then the defendant would not be liable to the plaintiff, and you will return a verdict in its favor."

The appellant objected generally to the instruction given at the request of the appellee, and also specifically as follows: "Because it authorizes the jury, in the event they should find for the plaintiff, to recover damages for mental anguish. * * * There is no physical ejection at all. If there is any ejection at all it is constructive purely. * * * Mental anguish is not recoverable for merely constructive ejection."

The appellant, in its motion for a new trial, assigned as error the giving of appellee's instruction No. 1, and

also the general assignments that the verdict was against the evidence and against both the law and the evidence.

1. The appellee alleged that he was forcibly evicted from the train, and also that the eviction was unlawfully and wilfully done. Appellant denied that the auditor of its train forcibly evicted appellee, and denied that such alleged eviction was unlawfully and wilfully done. Thus the pleadings raised the issue as to whether or not the appellee was forcibly, unlawfully and wilfully evicted from the appellant's train. In *Hall* v. *Waters,* 118 Ark. 427-432, we said: "Each and all of the material allegations of appellant's complaint were specifically denied by the allegations of appellee's answer. The denials were as specific as the allegations. This placed the burden upon the appellant to prove the allegations of his complaint. * * * So here the answer of the appellant challenged the allegations of the appellee's complaint, and placed the burden upon the appellee to prove that there was an unlawful eviction. Such proof was essential to appellee's cause of action for an eviction. The proof was directed to the issue as to whether or not there was an unlawful eviction, and the appellee's instruction as well as the instruction for the appellant presented the issue as to whether or not the appellee was ejected from the appellant's train, or whether he voluntarily left the same."

The undisputed testimony shows that the appellee's son was over five years of age; that the auditor demanded the fare for this child, the appellee did not pay the same, and the auditor informed the appellee that he would have to pay the fare for the child or he would put him off at Red Bluff. When they reached Red Bluff the appellee still had not paid the fare of his son to Orton. Appellee had only paid twenty cents to Red Bluff, and the fare to Orton was twenty-four cents. At Red Bluff appellee and appellant's auditor were in a controversy concerning the fare. Appellee wanted the auditor to pay him part of the money back, which the auditor refused

to do. John Machen, one of the passengers who was getting off at Red Bluff, took hold of the appellee's boy and said, "Come on," whereupon the appellee, according to his own testimony, picked up his stuff and got off the train. The auditor did not take hold of the appellee.

It thus appears from the undisputed testimony that the appellee got off the train at Red Bluff because the auditor had refused to carry the appellee's child to Orton, unless his fare was paid, which was not done. The question therefore is whether or not, under the above undisputed facts, the appellant had the right to require the appellee to leave its train because he had not paid his son's fare from Red Bluff to Orton.

Sec. 879 of C. & M. Digest authorizes railroads to charge one-half fare for children between the ages of five and twelve years, and sec. 881 authorizes the eviction of any person from railway trains who refuses to pay fare or toll, the eviction to take place at any usual stopping place the conductor may select. The father, having the custody and control of his minor child when he took same upon the train with him as a passenger, was under the duty to pay his fare. Such was his duty as the natural guardian and protector of his child, and, upon his failure to do so, the appellant had the right to eject both father and child from its train. *Philadelphia, etc., Ry. Co.* v. *Hoeflich*, 62 Md. 300, and other cases cited in note, 10 C. J., sec. 1172, p. 733.

It follows from the undisputed evidence that no cause of action in favor of the appellee against the appellant could be predicated upon an unlawful eviction, for there was none. The appellee contends that the question of whether or not he could recover if he refused to pay the fare of his minor son from Red Bluff to Orton was not an issue in the court below and was not presented either to the court or jury. But we do not agree with the appellee in this contention. It was necessarily raised and was developed in the testimony on the

issue as to whether or not there was an unlawful eviction of the appellee. It was incumbent on the appellee to prove that there was an unlawful eviction, before he established his cause of action. One of the grounds of the motion for a new trial is that the evidence was insufficient to sustain the verdict.

The judgment is therefore reversed, and the cause is dismissed.