# ANTHONY PESSAGNO

## *vs.*

## LAWRENCE J. KEYES.

*Malicious Prosecution—Prayers—sufficiency of Evidence—
Probable Cause.*

In passing on a demurrer to the evidence, any conflict in
the evidence is to be disregarded, and any relevant and ma-
terial evidence supporting the plaintiff's claim must be accepted
as true.                                                    p. 440

In an action for malicious prosecution, a prayer submitted
by plaintiff that if the jury find that plaintiff was arrested,
tried, and acquitted in a certain court on the charge set forth
in the record and docket entries read in evidence, and that
defendant aided in procuring or directed the arrest and prose-
cution of plaintiff under such circumstances as would not have
induced a reasonable and dispassionate man to have undertaken
such prosecution from public motives, then there was no prob-
able cause for said prosecution, and the jury may infer, in the
absence of proof to satisfy them to the contrary, that such
prosecution was malicious in law, and their verdict may be for
plaintiffs, was properly granted.                           p. 440

Where there was evidence that defendant procured the arrest
and imprisonment of plaintiff on a charge which defendant
knew to be false when he made it, and that the charge was
abandoned and plaintiff released and discharged therefrom,
and that when he made the charge defendant knew that plain-
tiff was not and could not be guilty, it was proper to refuse a
prayer based on the theory that there was no evidence legally
sufficient to entitle plaintiff to recover.                 p. 441

To the successful prosecution of an action for malicious
prosecution, the essential elements are: the commencement or
continuance of an original criminal or civil judicial proceed-
ing; its legal causation by the present defendant against plain-

tiff, who was defendant in the original proceeding; its *bona fide* termination in favor of the present plaintiff; the absence of probable cause for such proceeding; the presence of malice therein; damage conforming to legal standards resulting to plaintiff.　　　　　　p. 441

That defendant, when he caused plaintiff's arrest as for robbery, mistakenly believed that he had been robbed, is no defense to an action against him for malicious prosecution.　　　　p. 442

*Decided June 25th, 1923.*

Appeal from the Baltimore City Court (DAWKINS, J.).

Action by Lawrence J. Keyes against Anthony Pessagno. From a judgment for plaintiff in the sum of six hundred dollars, defendant appeals. Affirmed.

The cause was argued before BOYD, C. J., THOMAS, PATTISON, URNER, and OFFUTT, JJ.

*Arthur R. Padgett,* with whom was *Charles Jackson* on the brief, for the appellant.

*S. Ralph Warnken,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

The only exception presented by the record in this case relates to the rulings of the trial court on the prayers.

The facts are simple and few and may be briefly stated:

On the night of December 8th, 1920, Lawrence J. Keyes, then employed as a cab driver by the Yellow Taxicab Company, received a call to go to the Ensor Cafe, 601 Ensor Street, Baltimore. When he arrived there in answer to the call he was met by Ethel Blum, who requested him to go to Middleburg, near Middle River in Baltimore County. As they were going there they found an automobile belonging to the appellant, Anthony Pessagno, "ditched." Pessagno lived

in Baltimore City and had an interest in the Ensor Cafe, and also owned a number of "shores," waterfront lots improved by dwellings, near Middle River, which he rented. On the occasion referred to above he was returning from a visit to these shores where he had gone to collect the rents when he drove his car into a ditch. He then tried to ask his wife over the telephone to come down for him in a cab. He was not able to reach his wife and the message was received by a Miss Blum who was formerly employed by him and knew him very well. When she received the message she said, "Maybe Tony is hurt, I will go, I will get a taxi and go down myself." She then called for a taxi and when Keyes came in response to the call she went with him to Pessagno. When they reached Pessagno's car he told them to go to Bennett's shore about a mile away and wait for him. He joined them there later and there they remained for several hours. Keyes then at Pessagno's order drove them to the Ensor Cafe. Keyes was on the front seat and Pessagno and Miss Blum were on the rear seat. When they reached there Pessagno gave Keyes a torn ten dollar bill and a five dollar bill in payment of the cab fare. A few minutes later he cried out, "I have been rolled for five hundred dollars. Hold this man and woman." A policeman was then sent for and when he came Pessagno demanded that Keyes and the woman be searched. The policeman refused to search them there but took them to the Northwestern Police Station where Pessagno laid a charge of larceny against them. They were then searched and no money of the defendant was found on either of them except the money he had paid Keyes for the hire of the cab. Keyes was then locked up in a cell for the night. The next morning Pessagno came to the station house and told the police magistrate "it was all a mistake, that he had been drinking, and he did not want to prosecute anybody." Keyes was thereupon discharged.

Pessagno in the course of his testimony said he never had accused either Keyes or Miss Blum of taking his money,

that he knew the girl was honest and that Keyes could not have taken it because he was not on the seat with him. He denied that he had ever charged Keyes with the theft or prosecuted him. After his release Keyes, through his attorney, demanded that Pessagno compensate him for the injury done him as a result of the charge brought against him by Pessagno and, upon his refusal to comply with that demand, Keyes brought this action in the Baltimore City Court. The trial resulted in a verdict for the plaintiff from which the defendant has appealed.

At the conclusion of the testimony in the trial below the plaintiff offered two prayers which were granted and the defendant five, of which two were refused and the others granted.

In dealing with these prayers we will treat the facts to which we have referred as established. It is true the defendant denies many of them, but since we are passing upon a demurrer to the evidence we must disregard that conflict and accept as true any relevant and material evidence found in the record which supports the plaintiff's claim, and we have so dealt with it in stating the facts of this case.

The plaintiff's first and second prayers are free from objection and were properly granted. The defendant's contention is that he was prejudiced by that part of the plaintiff's first prayer by which the jury were instructed "that if they shall find from the evidence that the plaintiff was arrested, tried and acquitted in the Northeastern Police Station of Baltimore City on the charge set forth in the record of that court, and the docket entries read in evidence, and shall find that the defendant aided and assisted in procuring or directed the arrest and prosecution of the plaintiff under such circumstances as would not have induced a reasonable and dispassionate man to have undertaken such prosecution from public motives, then there was no probable cause for said prosecution, and the jury may infer, in the absence of sufficient proof to satisfy them to the contrary, that such prosecution

was malicious in law, and their verdict may be for the plaintiff." That prayer in substance was approved in *Cecil* v. *Clarke,* 17 Md. 524, and in the later case of *Torsch* v. *Dell,* 88 Md. 468, and so far as we know it has never been questioned as a clear and correct statement of the law. Certainly there is nothing in the cases of *Boyd* v. *Cross,* 35 Md. 196, or *Medcalfe* v. *Brooklyn Ins. Co.,* 45 Md. 198, which in any way qualifies or weakens the authority of *Cecil* v. *Clarke, supra,* to which they both refer with approval.

The defendant's first prayer is based upon the theory that there is no evidence in the case legally sufficient to entitle the plaintiff to recover. Considering only the evidence supporting the plaintiff's claim, the prayer admits that the defendant caused and procured the arrest and imprisonment of the plaintiff on a charge which he, the defendant, knew to be false when he made it and that the charge was abandoned and the plaintiff released and discharged therefrom, and that when he made the charge the defendant knew the plaintiff was not and could not have been guilty of the crime charged. Admitting so much he necessarily admits the plaintiff's right to recover.

*Dorsey* v. *Winter,* April Term, 1923; *Jordan* v. *Piano Company,* 140 Md. 207; *Boyd* v. *Cross,* 35 Md. 196.

The elements essential to the successful prosecution of such an action as this may be thus stated: "(1) The commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its *bona fide* termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; (6) damage conforming to legal standards resulting to plaintiff." 26 *Cyc.* 8. All of these elements are found in the facts stated above, and in our opinion the defendant's first prayer was properly refused.

By the defendant's third prayer the plaintiff's right to recover was made to depend upon the hypothesis that when he caused, the plaintiff's arrest he, Pessagno, believed that he had been robbed. But as was said in *Johns* v. *Marsh*, 52 Md. 323, "mere belief that cause existed, however sincere that belief may have been, is not sufficient; for, as said by *Judge Cooley*, one may believe on suspicion and suspect without cause or his belief may proceed from some mental peculiarity of his own; there must be such grounds of belief, founded upon the actual knowledge of facts, as would influence the mind of a reasonable person, and nothing short of this can justify a serious and formal criminal charge against another." The proposition submitted by the prayer was therefore untenable and the prayer should have been, as it was, refused.

Finding no error in the rulings of the trial court, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs to the appellee.*