SAFEWAY STORES, INC. ET AL. *v.* BARRACK

[No. 180, October Term, 1955.]

*Decided May 8, 1956.*

The cause was argued before Brune, C. J., and Delaplaine, Collins, Henderson and Hammond, JJ.

*Calvin H. Cobb, Jr.,* with whom were *R. Tilghman Brice, III,* and *Arthur B. Hanson* on the brief, for the appellants.

*Ridgely P. Melvin, Jr.,* with whom were *McWilliams, Evans & Melvin* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment of the Circuit Court for Anne Arundel County in an action in four counts for malicious prosecution and false imprisonment. The jury rendered a verdict of $2,500.00, which was reduced by remittitur to $1,250.00. The principal questions raised are as to the legal sufficiency of the evidence and the correctness of the court's charge.

The plaintiff was a waterman, sixty-three years of age, who lived alone at Edgewater on the South River, about six miles from Annapolis. For ten years he had made a habit of shopping in Annapolis. On the morning of September 3, 1954, he entered the Safeway store with two bundles of laundry and a large bag in which were purchases he had made elsewhere. He placed these in a pushcart and proceeded to fill it with other articles he selected from the self-service counters. When he approached the check-out stand he left the cart there and went to another part of the store to get a carton in which to place his purchases. When he returned the girl had checked his purchases and he paid her for them. When he picked up one of the laundry bundles he testified that a pound of butter fell down on the floor. This was one of the articles he had selected in the store. One of the store employees, Mr. Smith, came up at this time and accused him of trying to steal the butter. Smith was wearing a badge. The girl said she had not seen the butter in the cart and had not checked it out. The witness offered to pay for it, but Smith told the girl not to take the money, he was "going to have him locked up". Smith also produced a box of pepper and accused the witness of taking it. The witness had not taken the pepper, he never used it. He went out into the street. Smith followed him, called him vile names, and ordered him to come inside. They went to a back room and waited until a police officer arrived. Smith charged him with stealing a pound of butter and a one ounce box of pepper,

valued at some eighty-four cents. The officer took him to the police station and put him in a cell, but permitted him to call an attorney who secured his release upon posting collateral. At the trial before a magistrate on September 20 he was found not guilty. Smith was the prosecuting witness. Barrack was never served with a warrant.

Smith's version of the incident was quite different. He testified he was watching Barrack and saw him take the butter from one of the counters and put it in a paper bag that he had brought into the store. He saw him take the pepper from another counter and put it in his pocket. After Barrack had checked out he saw him put the butter and pepper in his carton. Barrack was on his way out when Smith stopped him. Smith had known Barrack before. He denied having any ill will against him, "but he got so arrogant and mean and nasty at the check stand that I had to do something with him. * * * he got so nasty, I got kind of mean myself." The manager of the store came into the back room while he and Barrack were there. Barrack offered to "pay double the amount of the merchandise rather than have any trouble." Smith testified: "My job is to break up shoplifting." He had instructions from Mr. Anderson, the Retail Operations Manager in Washington, to "use my own discretion if people acted nasty, just do what I wanted to do with them. * * * I hardly ever lock anybody up who is actually half-way decent and sorry they did it or they have some good excuse and they say they are not going to do it again. If I locked everybody up I caught, I would probably be in Court all the time." He had a call put in for the police, but did not swear out a warrant, although he testified at the trial before the magistrate. He remained in the employ of the appellant until April 7, 1955, and was not discharged then. "I was in Mr. Anderson's office about a week before that * * * and he told me then he wasn't going to stop any means of helping to protect the company's property."

Mrs. Nevin, the check-out girl, testified that Barrack had a paper bag in his hands the whole time and did not place it in the cart. She checked out all the articles that were in

the cart, and did not find any butter or pepper there. Barrack did not pay for these articles. Mr. Cross, the store manager, testified that Mr. Smith was "on duty" in the store, and told him that Barrack had taken some articles without paying for them. He was present in the back room with Smith and Barrack but did not call the police. "Ordinarily Mr. Smith takes care of that on any case of this kind."

It is elementary that in passing upon a motion for directed verdict or motion for judgment N. O. V. the testimony, and all proper inferences therefrom, must be considered in a light most favorable to the plaintiff's case. There is no merit in the appellant's contention that "the evidence overwhelmingly preponderated against the verdict". The weight and preponderance of the evidence is for the triers of fact and cannot be reviewed on appeal. *Pessagno v. Keyes,* 143 Md. 437, 440; *E. Coast Lines v. M. & C. C. of Balto.,* 190 Md. 256. Nor is the question of whether the verdict was excessive open on appeal. *Patapsco Loan Co. v. Hobbs,* 134 Md. 222, 227. The case of *Heinze v. Murphy,* 180 Md. 423, 429, is not to the contrary. That was a non-jury case where the claim of excessive damages in an assault by a policeman was predicated upon the allowance of punitive as well as compensatory damages. This Court found that a case justifying punitive damages had not been established, but affirmed the judgment for compensatory damages.

The necessary elements of a case for malicious prosecution of a criminal charge are well established. There must be (a) a criminal proceeding instituted or continued by the defendant against the plaintiff, (b) termination of the proceeding in favor of the accused, (c) absence of probable cause for the proceeding, and (d) "malice", or a primary purpose in instituting the proceeding other than that of bringing an offender to justice. *Prosser, Torts* (2d ed.), p. 646; *Restatement, Torts,* § 653; *Pessagno v. Keyes, supra; Delk v. Killen,* 201 Md. 381, 383. In the kindred action for false imprisonment, there must be a deprivation of the liberty of another without his consent and without legal justification. Although intent is necessary, "malice" is not, nor is probable

cause a defense. *Fleisher v. Ensminger,* 140 Md. 604, 620; *Prosser, Torts* (2d ed.), p. 52. The chief distinction between the two actions lies in the existence of valid legal authority for the restraint imposed. *Lewin v. Uzuber,* 65 Md. 341, 348.

We think there was legally sufficient evidence to warrant the submission of the case to the jury in each case. The jury could have found that the plaintiff was restrained from leaving the premises until the police arrived, without legal justification, and put in jail without the service of any warrant. If they chose to believe Barrack's story they could have found that he had no intention of taking the butter without paying for it and that he did not take the pepper at all. Smith was the moving cause of his subsequent imprisonment, even though Smith did not swear out any warrant. One who instigates or aids and assists in a criminal prosecution may be liable regardless of whether he swears out a warrant. *Mertens v. Mueller,* 119 Md. 525, 537; *Mertens v. Mueller,* 122 Md. 313, 321. See also *Restatement, Torts,* § 653, and *Zenik v. O'Brien,* 79 A. 2d 769 (Conn.).

There was evidence that Smith was employed for the very purpose of apprehending and prosecuting shoplifters, and the jury could properly find that his actions were in the regular course of and within the scope of that employment. Cf. *McCrory Stores v. Satchell,* 148 Md. 279, 286, and *B., C. & A. Ry. Co. v. Ennalls,* 108 Md. 75. In *Nance v. Gall,* 187 Md. 656, the employee who instituted the proceedings, by swearing out a warrant, had no express or implied authority to do so. He was a railroad superintendent charged with the general duty of protecting the company's property. He learned that a logging operator working along the railroad's right of way had cut a tree that in falling took down some of the telegraph wires. Some time after these had been repaired, and there was no longer any need to protect the company's property, he procured the warrant. It was held that there was no evidence of express authority or ratification by the company, and the action was beyond the scope of his general authority. We think the case is distinguishable. *Central*

*Railway Co. v. Brewer,* 78 Md. 394, 406, is distinguishable on the same ground. In the instant case Smith was employed to apprehend and prosecute shoplifters and given a wide discretion in this very field.

We think the testimony of the plaintiff, if believed, would support a finding that the plaintiff's prosecution was without probable cause. If the butter were in the cart when the other articles were checked out, there was no basis on which a reasonable man could conclude that Barrack intended to secrete or steal it. If Barrack never took the pepper from the self-service counter, the inference might be drawn that Smith tried to palm it off on him.

While the court must determine as a matter of law whether probable cause is established upon a given state of facts, where the facts are disputed the question may properly be submitted to the jury under adequate instructions. *Kennedy v. Crouch,* 191 Md. 580, 590. In *Nance v. Gall, supra* (p. 669), and in *Straus v. Young,* 36 Md. 246, 255, it was said that acquittal before a magistrate, which is a necessary element of the action, would permit an inference of a want of probable cause, although it has been pointed out that the circumstances on which the instigator acted would not necessarily be germane to the issue in the criminal prosecution and the acquittal may be based on a mere lack of proof beyond a reasonable doubt. *Restatement, Torts,* § 667, comment (c). We have held that malice may be inferred from a lack of probable cause, although want of probable cause cannot be inferred from any degree of malice. *Kennedy v. Crouch, supra* (p. 587) ; *Medcalfe v. Brooklyn Life Ins. Co.,* 45 Md. 198, 204; *Prosser, Torts* (2d ed.), p. 660. Probable cause is a good defense, although the instigator may have been actuated by malice and the accused was acquitted. *Kennedy v. Crouch, supra; Stansbury v. Luttrell,* 152 Md. 553, 556. The presumption of malice resulting from the want of probable cause is only *prima facie* and may be rebutted by the circumstances under which the defendant acted. *Stansbury v. Fogle,* 37 Md. 369, 380.

The appellant strongly attacks the award of punitive dam-

ages both as against Smith and his employer. Although the allowance of punitive damages is somewhat anomalous and has been rejected in a few states, it has been generally recognized. *Prosser, Torts* (2d ed.), p. 9. It has long been recognized in Maryland. In *Bernheimer v. Becker,* 102 Md. 250, a case of assault and false imprisonment, it was said that to justify an award of punitive damages there must be circumstances tending to show that the wrong was inflicted maliciously or wantonly or with circumstances of contumely and indignity, citing *Sloan v. Edwards,* 61 Md. 89, 100. In *Heinze v. Murphy, supra,* a case of assault and false imprisonment against a policeman, it was said (p. 434) that "where damages beyond compensation, to punish the party guilty of a wrongful act, are asked, the evidence must show wanton or malicious motive, and it must be actual and not constructive or implied." On the other hand, in *McNamara v. Pabst,* 137 Md. 468, 473, a case of malicious prosecution, it was held that a prayer which did not require a finding of malice as a prerequisite to punitive damages was not defective, since such a finding would be implicit in a verdict for the plaintiff, which would necessarily include a finding of malice.

The reasoning that would support an award of punitive damages against Smith would not necessarily apply to his employer. Some courts have held that a principal is not liable for punitive damages unless the principal authorizes, ratifies or participates in the act complained of. *Lake Shore &c. Railway Co. v. Prentice,* 147 U. S. 101; *Prosser, Torts* (2d ed.), p. 21; *Restatement, Torts,* § 909. Cf. *Wardman-Justice Motors v. Petrie,* 39 F. 2d 512 (D. C.), and *Safeway Stores v. Gibson,* 118 A. 2d 386, 388 (Mun. C. A., D. C.), in which cases the courts found evidence of express authorization or ratification from the terms of employment and the retention of the agent after the incident was reported. But the Maryland cases take a less strict view. In *Boyer & Co. v. Coxen,* 92 Md. 366, 371, punitive damages were allowed against an employer in an assault case, where there was no evidence of authorization, participation or ratification. There was, of course, evidence that the servant was acting in furtherance of

the master's business, although his action in beating the plaintiff with a wrench was "wanton, high-handed and outrageous". See also *Dennis v. Baltimore Transit Co.,* 189 Md. 610, 616, and *Balt. & Yorktown Turn. v. Boone,* 45 Md. 344.

The court's charge to the jury was on the whole accurate and fair. After correctly stating the elements of the two causes of action and the rule as to burden of proof, the court charged that if the jury should find for the plaintiff as to the false imprisonment, in order to award punitive damages they would have to find that the acts were done wantonly, wilfully and maliciously. As to the malicious prosecution counts, the jury was instructed that they must find a want of probable cause, plus malice, but that malice might be inferred from a want of probable cause. After defining probable cause, the court instructed the jury that this does not mean " 'sufficient cause,' as there are acquittals of people charged with crime when there may have been probable cause for prosecution, but not sufficient cause for conviction." The court also charged that if they found for the plaintiff on the malicious prosecution counts, they should not award any separate damages for the false imprisonment, but bring in one verdict, "if you find for the plaintiff in the entire situation after you have weighed all the evidence".

The appellant objects to the use of the phrase "from public motives", in the definition of probable cause. It is sufficient to observe that this language was specifically approved in *Mertens v. Mueller, supra* (119 Md. 525, 535). The objection to the definition of malice is likewise without merit, under the cases cited. The objection that the court allowed an award of punitive damages against the employer for malicious prosecution is also without merit. This instruction was predicated upon a finding that the employee was acting within the scope of his employment and without probable cause. The argument that punitive damages could not be found without a showing of "actual or express" malice, is answered by *McNamara v. Pabst, supra,* so far as the malicious prosecution is concerned, and the court charged that actual malice was necessary as to the false imprisonment. Moreover, there

was no objection to the instruction as to a single verdict, which the jury followed.

*Judgment affirmed, with costs.*