## KRASHES ET UX. *v.* WHITE ET AL.

[Misc. No. 5, September Term, 1974.]

*Decided July 16, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Michael P. Crocker* for petitioners.

*K. Donald Proctor*, with whom was *David L. Bowers* on the brief, for respondents.

ELDRIDGE, J., delivered the opinion of the Court.

This is a certified question case, under the Uniform Certification of Questions of Law Act, Maryland Code (1974), §§ 12-601 *et seq.*, of the Courts and Judicial Proceedings Article.[1] The appellants filed a diversity action in the United States District Court for the District of Maryland, seeking damages resulting from alleged malicious prosecution and abuse of criminal process. The claim arose from the arrest of the appellant, Hershey Krashes, in Frederick, Maryland; his confinement in Frederick; his extradition to Richmond, Virginia; and his subsequent imprisonment in that city until the charge against him was nol prossed. The appellees filed a motion to dismiss the

---

1. That Act provides in part:

"**§ 12-601. Jurisdiction granted to Court of Appeals**

"The Court of Appeals may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a United States District Court, or the highest appellate court or the intermediate appellate court of any other state when requested by the certifying court if there is involved in any proceeding before the certifying court a question of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the Court of Appeals of this state."

complaint on the ground that the United States District Court in Maryland lacked personal jurisdiction over them. A hearing was held on the motion, and the District Court took the matter under consideration. Before any ruling on the appellees' motion, the appellants filed a motion requesting the District Court to certify to this Court those issues of Maryland law which might be determinative in ruling on the appellees' motion to dismiss. Thereafter, the District Court certified three questions of law to this Court. The questions certified are:

"(1) Is arrest an essential element of the torts of criminal malicious prosecution and abuse of process, or does the occurrence of an arrest in these torts provide merely an aggravation of damages?

"(2) If arrest is an essential element of the torts of criminal malicious prosecution and abuse of process, then did 'tortious injury' occur in the State of Maryland, although the remaining elements of both torts occurred in the Commonwealth of Virginia?

"(3) If 'tortious injury' did not occur in the State of Maryland but, rather, occurred in the Commonwealth of Virginia, does the recently amended portion of Article 75, section 96 (a) (4) of the Maryland Annotated Code extend personal jurisdiction to a fact situation such as that involved in the instant action? "

The "Statement of Facts" contained in the District Court's Order of Certification sets forth the following:

"Briefly stated, this action had its origination when a check for $644.00 was given by plaintiff, Hershey Krashes, to defendant corporation, Modern Coin Shop ["Modern"], in Richmond, Virginia; the check was subsequently returned for insufficient funds. After repeated efforts to collect, Modern, through its chief executive and principal manager, defendant Arthur Wilkerson, retained

the Richmond law firm of White, Roberts, Cabell & Paris ["the firm"], which is also a defendant, to aid in the collection of the check. The firm, through an associate and defendant, Conrad Lewane, sent several letters to Krashes threatening action if the amount of the check was not paid.

"These threats were carried out when a complaint was filed in Richmond concerning the check. As a result of this complaint a warrant was issued for plaintiff's arrest. Acting upon the request of the Richmond police, the Frederick, Maryland police obtained [from a justice of the peace] a fugitive warrant for plaintiff's arrest. Plaintiff was subsequently taken into custody by the Frederick police and then transported to Richmond to stand trial on a felony charge.

"Once incarcerated in Richmond, plaintiff alleges the defendant-firm, through its associates, extracted a $500.00 check from plaintiff's sister and a $1,400.00 confessed judgment note from plaintiff. After these items were received from plaintiff, it is alleged that defendant-Lewane notified the local State's Attorney that an error had been made, thereupon the charge against Krashes was *nol prossed*.

"Plaintiff instituted an action in this Court, seeking relief on two counts: one for abuse of process, and the other for malicious prosecution. Plaintiffs are citizens and residents of the State of Maryland and defendants are citizens and residents of or are incorporated in and with their principal place of business in the Commonwealth of Virginia. Plaintiff alleges that defendants have persistently engaged in commercial conduct in the State of Maryland.

"Defendants have filed a motion to dismiss the action and to quash service of process, arguing that this Court lacks *in personam* jurisdiction.

Jurisdiction, if it exists, must be obtained through the Maryland 'long-arm' statute, Art. 75, §§ 94-100, Md. Ann. Code (1969 Repl. Vol., as amended)."

In addition to the facts set forth in the Order of Certification, the record reveals the following facts which may be pertinent to any consideration of the jurisdictional issue in this case. In 1967, an attorney from the appellee law firm, White, Roberts, Cabell & Paris, represented a party in a case in the United States District Court for the District of Maryland. Between 1967 and 1970, the firm represented three Maryland residents in civil cases brought in Virginia courts. The firm communicated with its Maryland clients and co-counsel by telephone and letter. The firm received over $15,000 in fees in the three cases in which it represented Maryland residents in Virginia.

Pursuant to Maryland Rule 896 (a) (iv), the District Court ordered that the plaintiffs be treated as the appellants in the certification procedure.

Before this Court, the appellees "concede for purposes of argument that 'tortious injury,' based on the allegations of the Complaint, occurred in this state." [2] However, the appellees maintain that the first two issues certified by the United States District Court are "immaterial to the resolution of the central issue of personal jurisdiction in this case." [3] The appellees contend that, if personal jurisdiction in the District Court over them exists, it must be based on Code (1974), § 6-103 of the Courts and Judicial Proceedings Article (the "long arm statute").[4] They further argue that personal jurisdiction over them cannot be obtained under § 6-103.

The appellants contend that arrest is an indispensable element of the torts of malicious prosecution and abuse of criminal process, although in oral argument before us they agreed with the appellees that this question does not

---

2. Appellees' brief, p. 19.
3. *Id.* at 8, 19.
4. Formerly Code (1957, 1969 Repl. Vol.), Art. 75, §§ 94-100.

determine the matter of personal jurisdiction over the appellees. Appellants further argue that the District Court had personal jurisdiction over the appellees under § 6-103 of the Courts and Judicial Proceedings Article.

(1)

The first question certified by the District Court is whether "arrest [is] an essential element of the torts of criminal malicious prosecution and abuse of process, or does the occurrence of an arrest in these torts provide merely an aggravation of damages? "

We conclude that arrest is not an essential element of the tort of "criminal" malicious prosecution. The elements of malicious prosecution of a criminal charge have been clearly stated many times by this Court. In *Brewer v. Mele*, 267 Md. 437, 440, 298 A. 2d 156 (1972), the Court set them forth as follows:

> "The necessary elements of a case for malicious prosecution of a criminal charge are well established. There must be: (a) a criminal proceeding instituted or continued by the defendant against the plaintiff, (b) termination of the proceeding in favor of the accused, (c) absence of probable cause for the proceeding, and (d) malice, or a primary purpose in instituting the proceeding other than that of bringing an offender to justice."

*Jannenga v. Libernini*, 222 Md. 469, 472, 160 A. 2d 795 (1960); *Banks v. Montgomery Ward & Co.*, 212 Md. 31, 38, 128 A. 2d 600 (1957); *Safeway Stores, Inc. v. Barrack*, 210 Md. 168, 173, 122 A. 2d 457 (1956); *Delk v. Killen*, 201 Md. 381, 383, 93 A. 2d 545 (1953); *Kennedy v. Crouch*, 191 Md. 580, 586-587, 62 A. 2d 582 (1948); *Goldstein v. Rau*, 147 Md. 6, 13, 127 A. 488 (1925); *Pessagno v. Keyes*, 143 Md. 437, 441, 122 A. 651 (1923); *Medcalfe v. Brooklyn Life Ins. Co. of New York*, 45 Md. 198, 203-204 (1876); *Boyd v. Cross*, 35 Md. 194, 196 (1872); Prosser, *Torts* § 119 at 835-836 (4th ed. 1971).

On the other hand, the tort of malicious use of civil

process requires, in addition to the four essential elements of malicious prosecution of a criminal charge set forth in *Brewer v. Mele, supra,* that there be "damages . . . inflicted on the plaintiff by seizure of his property or other special injury." *Wesko v. G.E.M., Inc.,* 272 Md. 192, 197, 321 A. 2d 529 (1974); *Siegman v. Equitable Trust,* 267 Md. 309, 317, 297 A. 2d 758 (1972). Thus in an action for malicious use of civil process, arrest may in certain cases be an element of the tort since it may be considered the "special injury" which must be alleged. *North Point Constr. Co. v. Sagner,* 185 Md. 200, 207, 44 A. 2d 441 (1945); *Owens v. Graetzel,* 149 Md. 689, 694, 132 A. 265 (1926); *McNamee v. Minke,* 49 Md. 122, 133 (1878). Unlike a plaintiff in a malicious use of civil process suit, the plaintiff in a criminal malicious prosecution action need not prove any special damages, such as arrest or seizure of property.

The appellants would add to the requirement that a criminal proceeding be instituted by the defendant against the plaintiff, the requirement that this proceeding must involve the arrest of the plaintiff. It is true that the mere filing of a complaint, without some action by law enforcement or judicial officials, does not constitute the initiation of a criminal proceeding. Prosser, *supra,* at 836. The issuance of an arrest warrant or the making of an arrest may often be the first official action in a criminal proceeding. However, a criminal proceeding may be carried out completely without an arrest. For example, a defendant may be summonsed to appear at a trial without having been previously arrested, *see Delk v. Killen, supra,* or a defendant may be charged when unavailable to be arrested. We, therefore, conclude that arrest is not an essential element of the tort of criminal malicious prosecution.

Next, we consider whether arrest is an essential element of abuse of process. The tort of abuse of process occurs when a party has wilfully misused criminal or civil process after it has issued in order to obtain a result not contemplated by law. *Wesko v. G.E.M., Inc., supra,* 272 Md. at 195-196; *James v. Goldberg,* 256 Md. 520, 530, 261 A. 2d 753 (1970); *Walker v. American Security Co.,* 237 Md. 80, 87, 205 A. 2d 302 (1964);

*Bartlett v. Christhilf*, 69 Md. 219, 229, 14 A. 518 (1888); *Herring v. Citizens Bank & T. Co.*, 21 Md. App. 517, 528-529, 321 A. 2d 182 (1974); *see Zablonsky v. Perkins*, 230 Md. 365, 370, 187 A. 2d 314 (1963); Prosser, *Torts* § 121 (4th ed. 1971). While the issuance by a court of some sort of criminal process against a party is necessary before that party can properly bring an action for abuse of criminal process, there is no requirement that the party be arrested or that an arrest warrant against him be issued. The cases cited above make clear that arrest is not an essential element of the tort of abuse of criminal process.

### (2)

The second and third questions certified by the United States District Court are:

> "(2) If arrest is an essential element of the torts of criminal malicious prosecution and abuse of process, then did 'tortious injury' occur in the State of Maryland, although the remaining elements of both torts occurred in the Commonwealth of Virginia?
>
> "(3) If 'tortious injury' did not occur in the State of Maryland but, rather, occurred in the Commonwealth of Virginia, does the recently amended portion of Article 75, section 96 (a) (4) of the Maryland Annotated Code [now § 6-103 (b) (4) of the Courts and Judicial Proceedings Article] extend personal jurisdiction to a fact situation such as that involved in the instant action? "

As is apparent from this portion of the Order of Certification, the second question set forth by the District Court is to be answered by this Court only if we reply affirmatively to the first question in the order, and we answer that question in the negative. Consideration by this Court of the third question is premised on an answer to the second question and, as just pointed out, we are not called upon to answer the second question.

As previously discussed, both the appellants and the appellees took the position in argument before us that the answer to the first certified question was not necessarily dispositive of the jurisdictional issue in this case. Both sides urged us to answer the second and third certified questions or to decide whether or not, in light of the factual allegations of the complaint, a court in Maryland could under this State's "long arm" statute exercise jurisdiction over the appellees. However, the Uniform Certification of Questions of Law Act, Code (1974), §§ 12-601 *et seq.*, of the Courts and Judicial Proceedings Article, does not authorize us to go beyond the questions certified in the order of the certifying court. The Order of Certification issued by the United States District Court for the District of Maryland did not provide that we could in any way reformulate or rearrange the questions certified in order to set forth answers to what we might consider to be the essential jurisdictional issues in this case. Compare *Volkswagen of America v. Young*, 272 Md. 201, 205, 321 A. 2d 737 (1974), where the order of the certifying court, the United States District Court for the District of Columbia, "specified that the phrasing of the certified question was not intended to restrict our consideration of the problems involved and the issues as we perceive them in light of the complaint in the case." Consequently, we cannot specifically answer the second and third certified questions.

On the other hand, so that our holding in part (1) of this opinion is not misconstrued, and as we are inclined to agree with the parties that whether or not an *essential* element of the tort occurs in Maryland is not necessarily dispositive of the "long arm" statute's reach in this type of case, we shall briefly deal with the scope of the statute under Maryland law.

The "long arm" statute, § 6-103 of the Courts and Judicial Proceedings Article, provides in relevant part:

"(b) *In general.* — A court may exercise personal jurisdiction over a person, who directly or by an agent:

(1) Transacts any business or performs any character of work or service in the state;

(2) Contracts to supply goods, food, services, or manufactured products in the state;

(3) Causes tortious injury in the state by an act or omission in the state;

(4) Causes tortious injury in the state or outside of the state by an act or omission outside the state if he regularly does or solicits business, engages in any other persistent course of conduct in the state or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the state;

(5) Has an interest in, uses, or possesses real property in the state; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the state at the time the contract was made, unless the parties otherwise provide in writing."

Although six specific categories are listed in the subsections of § 6-103 (b), this Court has applied § 6-103 (b) flexibly, in order to carry out the legislative intent of extending the personal jurisdiction of Maryland courts as far as is possible consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. For example, the Court stated in *Gilliam v. Moog Industries, Inc.*, 239 Md. 107, 111, 210 A. 2d 390 (1965):

"It seems clear that the purpose of the Legislature in enacting these new provisions was to give the courts of the State personal jurisdiction over all out of state persons and corporations which constitutionally could be reached as having had sufficient Maryland contacts, under the jurisdictional yardstick established by the Supreme

Court in cases such as *International Shoe Co. v. Washington*, 326 U. S. 310, 90 L. Ed. 95; *McGee v. International Life Ins. Co.*, 355 U. S. 220, 2 L.Ed.2d 223; and *Hanson v. Denckla*, 357 U. S. 235, 2 L.Ed.2d 1283."

In *Harris v. Arlen Properties*, 256 Md. 185, 195-196, 260 A. 2d 22 (1969), this Court said:

"In our own State the Legislature sought to provide a more flexible approach to jurisdiction by enacting our present 'Long Arm' Statute, Chapter 95 of the Acts of 1964. This Court recognized that there was a purposeful effort on the part of the Legislature to broaden jurisdiction by expanding it to the boundaries of permissible constitutional limits."

*Lamprecht v. Piper Aircraft Corp.*, 262 Md. 126, 130, 277 A. 2d 272 (1971); *Groom v. Margulies*, 257 Md. 691, 700-701, 265 A. 2d 249 (1970); *Vitro Electronics v. Milgray*, 255 Md. 498, 504-505, 258 A. 2d 749 (1969); *Novack v. Nat'l Hot Rod Ass'n*, 247 Md. 350, 353-354, 231 A. 2d 22 (1967); *see Van Wagenberg v. Van Wagenberg*, 241 Md. 154, 164-165, 215 A. 2d 812, 27 A.L.R.3d 379, *cert. denied*, 385 U. S. 833, 87 S. Ct. 73, 17 L.Ed.2d 68 (1966); Auerbach, *The "Long Arm" Comes to Maryland*, 26 Md.L.Rev. 13, 30 (1966).

Perhaps fact situations will arise which will be deemed outside the scope of the Maryland "long arm" statute, although there may be a constitutional basis for jurisdiction over the nonresident defendant. Nevertheless, the prior decisions of this Court make it clear that the reach of the statute will largely depend upon whether Maryland *in personam* jurisdiction may be asserted under the Fourteenth Amendment. This, in turn, will involve applying the principles set forth in cases such as *Hanson v. Denckla*, 357 U. S. 235, 250-251, 78 S. Ct. 1228, 1238, 2 L.Ed.2d 1283, *reh. denied*, 358 U. S. 858, 79 S. Ct. 10, 3 L.Ed.2d 92 (1958), and *International Shoe Co. v. Washington*, 326 U. S. 310, 316,

319, 66 S. Ct. 154, 158, 160, 90 L. Ed. 95, 161 A.L.R. 1057 (1945).[5]

> *Question of law answered as herein set forth.*
>
> *Costs to be evenly divided.*

---

**5.** Of course, the application of the Fourteenth Amendment's Due Process Clause to the facts of a case pending in a federal court is exclusively the function of the federal court, and not within the Uniform Certification of Questions of Law Act.