**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 10-2172**

_____

NATALIE HAYES, individually; as the next best friend of
R.D.; RICARDO DIXON,

          Plaintiffs - Appellants,

     v.

CITY OF SEAT PLEASANT, MARYLAND; PFC BURNETT, Seat Pleasant
Police Department in both his official and individual
capacities,

          Defendants - Appellees.

_____

Appeal from the United States District Court for the District of
Maryland, at Greenbelt. Deborah K. Chasanow, Chief District
Judge. (8:08-cv-02548-DKC)

_____

Argued: December 8, 2011         Decided: March 14, 2012

_____

Before GREGORY and SHEDD, Circuit Judges, and Richard M. GERGEL,
United States District Judge for the District of South Carolina,
sitting by designation.

_____

Vacated and remanded by unpublished opinion. Judge Gregory
wrote the opinion, in which Judge Shedd and Judge Gergel joined.

_____

**ARGUED**: Gregory L. Lattimer, LAW OFFICES OF GREGORY L. LATTIMER,
Washington, D.C., for Appellants. Kevin Bock Karpinski,
KARPINSKI, COLARESI & KARP, PA, Baltimore, Maryland, for
Appellees. **ON BRIEF**: Michael B. Rynd, KARPINSKI, COLARESI &
KARP, PA, Baltimore, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

Appellant-plaintiffs Ricardo Dixon and Natalie Hayes filed an eight-count complaint asserting several civil rights and state law claims against defendant-appellees City of Seat Pleasant, Maryland, and officer Tracey Burnett stemming from their arrest on September 27, 2006. Hayes also brought suit on behalf of her minor daughter, R.D.

The district court granted the Appellees' motion for summary judgment and dismissed the Appellants' lawsuit, including the claim brought on behalf of the five-year-old child. At issue on appeal is the dismissal of the Appellants' constitutional claims for unlawful seizure and excessive force and state law tort claims for false arrest, battery, and malicious prosecution. For the reasons that follow, we vacate the district court's grant of summary judgment in favor of the Appellees as to these claims and remand for further proceedings.

I.

On September 27, 2006, Hayes, who was employed as a lieutenant with Coastal International Security,[*] arrived home in uniform at approximately 4:00 p.m. and began talking to a family

---

[*] Coastal International Security provides security for government buildings.

friend, Antonio Sallis, who had been visiting Hayes, her husband Dixon, and their two children. All were standing outside of the Dixon-Hayes home. At approximately 5:00 p.m., Dixon prepared to take Sallis back to his home. Dixon placed his son in a car seat in the rear of the vehicle, and Sallis got into the front passenger seat. As Dixon completed strapping his son into the car seat, he noticed that a police cruiser, later identified as Burnett's, was parked directly across from his driveway. From his driveway, Dixon asked Burnett if Burnett could move up so that he could back out of his driveway. In response, Burnett allegedly yelled in a loud voice, "What, you don't have enough room?" Dixon then got in his vehicle and waited for Burnett to move. After a few minutes, Burnett moved up the street and made a U-turn. Dixon proceeded to back out of the driveway, and as he pulled up to the nearest stop sign, Burnett activated his emergency lights and stopped Dixon's vehicle. The stop sign was at the corner of the Dixon-Hayes property.

Hayes, standing on the sidewalk near the passenger side of the patrol car with her daughter, asked Burnett why he was stopping her car and harassing her husband. Burnett allegedly responded, "Get the hell out of my face." Hayes again asked Burnett why he was harassing her family, at which time Burnett exited his car and came around the front of his vehicle and onto the sidewalk where Hayes and her daughter were standing.

4

Burnett approached Hayes on the sidewalk, pointed and shouted in her face, "Shut the hell up, shut the hell up." Hayes asked Burnett to back away from her because her daughter was hysterical at this time. As Hayes consoled her daughter, she backed up so that she was now near the rear window of her car, which was located on Seat Pleasant Drive. While Hayes was attempting to calm her daughter, Burnett grabbed her arm and pulled out his baton, which he fully extended. The parties agree that Burnett was physically handling Hayes as he backed her up. At that point, Dixon exited the car. Dixon asked Burnett to take his hands off of Hayes, and requested that he call a female officer. Burnett told Dixon to stay back, and Dixon complied. Nevertheless, Burnett holstered his baton and took out his pepper spray. Burnett sprayed Dixon and turned around and sprayed Hayes in her face, eye, nose, and mouth as Hayes held her daughter's hand. Appellants and witnesses testified that at the time Burnett sprayed Dixon, he was no closer than seven feet away, had obeyed Burnett's orders to stay back, and had made no further comments. They also testified that Hayes never left the sidewalk. Burnett testified that Hayes interfered with his traffic stop by stepping in between his and Dixon's vehicles. He also testified that Dixon bumped him when Dixon exited his vehicle.

5

After deploying pepper spray on the Dixon-Hayes family, Burnett then proceeded to arrest Hayes and Dixon. Hayes was charged with obstructing and hindering, resisting arrest, and disorderly conduct. Dixon was charged with second degree assault, obstructing and hindering, interfering with an arrest, and disorderly conduct. Following a jury trial on June 25, 2007, Dixon and Hayes were found not guilty of all charges. Dixon and Hayes then filed their eight-count complaint asserting the civil rights and state law claims against the Appellees.

The district court granted the Appellees' motion for summary judgment, finding there was probable cause for Burnett to initiate an investigatory traffic stop and probable cause to arrest Dixon and Hayes. The district court also found no evidence that Burnett acted with malice and that the force he deployed was objectively reasonable and did not amount to excessive force.

"We review the district court's summary judgment ruling de novo, viewing the facts in the light most favorable to . . . the non-moving party and drawing all reasonable inferences in her favor." Doe v. Kidd, 501 F.3d 348, 353 (4th Cir. 2007) (citation omitted).

The actions filed against Burnett and the city depend, to some extent, on the averment that Burnett had no probable cause to believe that both Hayes and Dixon had committed the crime of hindering.  The district court's grant of summary judgment in favor of the Appellees was based on the court's finding that Burnett did have such probable cause.  According to the district court, Hayes hindered Burnett during the investigatory traffic stop, and Dixon then hindered Burnett as Burnett attempted to arrest Hayes.  Appellants contend that the district court incorrectly determined there was no factual dispute with respect to probable cause to arrest Hayes and Dixon.  The probable cause question is therefore central to much of this appeal.

A. Unlawful Seizure

This Court has articulated the probable cause standard as "facts and circumstances within the officer's knowledge [which] would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." United States v. Manbeck, 744 F.2d 360, 376 (4th Cir. 1984).  Thus, to determine whether Officer Burnett had probable cause to lawfully arrest Appellants, a reviewing court necessarily must relate the events leading up to the arrest to the elements of the offense that Officer Burnett believed was being or had been committed.

That analysis requires a proper understanding of the elements of the alleged offense -- in this instance hindering. The elements of the offense of obstructing or hindering a police officer are

> (1) A police officer engaged in the performance of a duty;
> (2) An act, or perhaps an omission, by the accused which obstructs or hinders the officer in the performance of that duty;
> (3) Knowledge by the accused of facts comprising element (1); and
> (4) Intent to obstruct or hinder the officer by act or omission constituting element (2).

Cover v. State, 466 A.2d 1276, 1284 (Md. 1983). Further, the offense comprises three categories of conduct:

> (1) positive direct obstruction, in which the officer acts directly against the defendant or the defendant's property and is physically resisted; (2) passive direct obstruction, where the officer seeks to make the defendant act directly and the defendant refuses or fails to act as required; and (3) positive indirect obstruction, where the police are not acting directly against the [defendant] but are acting indirectly against other citizens who are, or may be, about to commit offenses against the criminal law, and the [defendant] does an act which obstructs them in their general duty to prevent or detect crime, intending to frustrate the police operation.

DiPino 729 A.2d at 361-62. (internal citation omitted).

Here, the district court found that the conduct at issue fell into the third category, positive indirect obstruction. With regard to Hayes, the district court indicated that "Officer Burnett could have reasonably believed that Hayes was hindering by verbally accosting him, even after he told her to move away

8

from the scene." With respect to Dixon, the district court stated, "A number of facts evidence that Dixon was hindering, such as Dixon's behavior, his statements to Officer Burnett to take his hands off his wife, and his movement away from the car after the officer ordered him to stay back."

Our review of the record in the present case reveals two conflicting versions of what transpired between Hayes, Dixon, and Burnett. Further, contrary to the district court's contention, these disputed facts go to the heart of whether probable cause existed to arrest Hayes and Dixon for hindering, rendering summary judgment inappropriate.

With regard to Hayes's arrest, the deposition testimony of Hayes and other witnesses is at odds with the district court's finding that "Hayes interfered with that stop, such that officer Burnett was unable to continue," and that "given that Hayes continued interfering even after Burnett ordered her to stop, one can infer intent to impede the police." It is unclear that Hayes "verbally accosted" Burnett at all or "interfered with the stop, such that officer Burnett was unable to continue," much less that she intended to do so, a requisite element of a hindering offense. According to Hayes and witnesses, Hayes never left the sidewalk and was holding the hand of her five-year-old child during the entire exchange with Burnett. From the sidewalk outside her home while dressed in her security

9

officer's uniform, she asked Burnett through an open passenger window why he was stopping the vehicle -- a seemingly reasonable inquiry based on the questionable circumstances of the traffic stop -- to which Burnett replied, "Get the hell out of my face." When Hayes asked him again why he was harassing her family, Burnett jumped out of his vehicle, came around to where Hayes was standing on the sidewalk, and pointed and shouted in her face, "Shut the hell up," all while she held her five-year-old daughter's hand. Hayes immediately backed away, consoled her hysterical daughter, and cut off communication with Burnett. It is undisputed that Burnett then physically grabbed Hayes and shortly thereafter deployed pepper spray in her face and placed her under arrest. Construing the facts in the light most favorable to Hayes, the evidence does not reveal that Burnett had probable cause to arrest Hayes for the crime of hindering.

The same is true for Dixon. Dixon testified that he exited the vehicle out of instinct when he saw "a big officer manhandling [his] wife with a baton in his hand" while she was holding their daughter's hand. He remained at least seven feet from Burnett, and when ordered to stay back, he obeyed. At no time did he come into contact with the officer or approach any closer. Apart from requesting a female officer as he watched Burnett twist his wife's arm while holding their hysterical child's hand, Dixon did not attempt to stop Burnett or interfere

10

with the arrest.   According to the witnesses on the scene, no resisting of arrest occurred, and no one gave Burnett any reason at all to be threatened.

What transpired between Burnett, Dixon, and Hayes is a matter of disputed fact that goes directly to the heart of whether Burnett was acting within the contours of his authority when he arrested the Appellants.   For the reasons given above, the district court's dismissal of the claims arising from the alleged unlawful arrest is vacated.

B. Excessive Force

Appellants further contend that the district court erred in concluding Burnett was entitled to summary judgment with respect to their claim for excessive force.   The Supreme Court has held that excessive force claims against law enforcement officers during the course of an arrest should be analyzed under the Fourth Amendment reasonableness standard.   Graham v. Connor, 490 U.S. 386, 395 (1989).  Reasonableness analysis requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."   Id. at 396.  Viewing the evidence in the light most favorable to the non-moving parties does not support the conclusion that the force used against

Dixon and Hayes was objectively reasonable and did not amount to excessive force.

This is especially evident in light of this Court's decision in Park v. Shiftlett, 250 F.3d 843 (4th Cir. 2001). In Park, a husband and wife mistakenly entered a convenience store that they believed was open, triggering the alarm. 250 F.3d at 848. After police arrived, various events led them to detain the husband. Id. When the wife saw her husband being handcuffed and pressed against a building, she responded by running toward her husband. Id. Police officers grabbed her, threw her against the building, handcuffed her, and sprayed her twice in the eyes with pepper spray at close range. Id. This Court determined that this "irresponsible use of pepper spray twice from close range was indeed excessive. . . . It is difficult to imagine the unarmed [wife] as a threat to the officers or the public." Id. at 852-53. The instant case is strikingly similar to Park. At the very least, what transpired between Burnett and the Appellants that resulted in the Appellants being pepper sprayed involves disputed facts that go to the heart of the Graham factors and should be decided by a jury.

C. False Arrest and Battery

With regard to Appellants' state law causes of action for false arrest and battery, the district court determined that

12

> [b]ecause the court has concluded that Officer Burnett possessed probable cause to arrest Plaintiffs for misdemeanors committed in his presence, the court will enter summary judgment for Defendants on count five, the false arrest and imprisonment claim . . . .

> Because the court has already determined that Officer Burnett did not use excessive force or unlawfully arrest Plaintiffs, the court must conclude there is no cause of action for battery either.

As discussed above, there is a genuine issue of material fact as to what transpired between Burnett and the Appellants that goes directly to the question of whether probable cause existed to arrest the Appellants for hindering and whether a basis existed for the force that was used. For these same reasons, the district court's dismissal of these counts is vacated.

D. Malicious Prosecution

The district court granted Appellees' motion for summary judgment as to the malicious prosecution count, because "Plaintiffs have not provided any evidence that any wrongful or improper motive drove Officer Burnett's actions." For the reasons explained below, we hold that the district court erred in reaching this conclusion.

To establish a malicious prosecution claim, Appellants must show that (1) Burnett instituted criminal proceedings against the Appellants; (2) the criminal proceeding was resolved in Appellants' favor; (3) Burnett did not have probable cause to

institute the proceeding; and (4) Burnett acted with malice or a primary purpose other than bringing appellants to justice. Okwa v. Harper, 757 A.2d 118, 130 (Md. 2000).

Appellees do not contest that following Appellants' arrest by Burnett, Hayes was charged with obstructing and hindering, resisting arrest, and disorderly conduct, and Dixon was charged with second degree assault, obstructing and hindering, interfering with an arrest, and disorderly conduct. It is also uncontested that Appellants were found not guilty of these charges. Thus, facts have been pled that, if proven, satisfy the first and second elements of the tort. Further, as discussed above, there is a triable issue as to whether Burnett had probable cause to arrest Appellants, precluding summary judgment for a failure to satisfy the third element. It is therefore necessary for us to consider whether, on this record and as a matter of law, Appellants lacked "malice, or a primary purpose in instituting the proceeding other than that of bringing the offender to justice." See Krashes v. White, 341 A.3d 798, 801 (Md. 1975).

The Court of Appeals of Maryland has long held that "the 'malice' element of malicious prosecution may be inferred from a lack of probable cause." Okwa, 757 A.2d at 133 (internal citations omitted). Moreover, the court has also held that summary judgment on malicious prosecution claims is improper

14

where, as here, genuine issues of material fact exist as to whether a defendant officer had probable cause to arrest a plaintiff. See id. (vacating summary judgment on malicious prosecution claim and explaining, "[b]ecause we have determined Appellees may not have had probable cause to arrest Mr. Okwa, further analysis of [the malice] element is unnecessary.") (emphasis added). Because disputed material facts exist in the record as to whether Burnett had probable cause to arrest Appellants, and inferences of malicious conduct may be drawn from a lack of probable cause, Appellants' malicious prosecution claim is likewise not amenable to disposition via summary judgment.

III.

As a final matter, the judgments entered by the district court in favor of the Appellees were based on the court's finding that Burnett did not violate the Appellants' constitutional rights. The court found it unnecessary to consider and rule upon any of the immunity defenses raised by the Appellees. Having determined there are factual matters in dispute, rendering summary judgment inappropriate, there is no legal issue on appeal on which we could base jurisdiction to address these immunity defenses. See Iko v. Shreve, 535 F.3d 225, 237 (4th Cir. 2008).

15

IV.

The district court considered areas of factual disagreement between the parties and rejected the contention that the disputed facts were material to resolution of the issues. This was in error. Appellants have alleged facts sufficient to create a genuine issue of material fact as to whether Hayes hindered Burnett during the investigatory traffic stop, whether Dixon hindered Burnett as Burnett attempted to arrest Hayes, and whether Burnett acted reasonably in pepper spraying Dixon and Hayes in front of their children. Contrary to the district court's contention, these disputed facts go to the heart of the Appellants' constitutional and tort law claims for unlawful seizure, excessive force, false arrest, battery, and malicious prosecution. As such, we vacate the district court's grant of summary judgment in the Appellees' favor on those claims. We remand to the district court for further proceedings consistent with this opinion.

VACATED AND REMANDED